DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Tonya Reynolds, has appealed from the order of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to Calvin Reynolds and granted permanent custody of Calvin to appellee, the Summit County Children Services Board ("CSB"). This Court affirms.
Appellant has never had custody of Calvin. Calvin was born on July 24, 1991. He tested positive for cocaine at the time of his birth. Following his birth, Calvin was placed with his maternal grandmother. He remained in her custody until November 1997, when CSB was granted emergency temporary custody.[1] At that time, evidence was presented to the court that the maternal grandmother had been evicted from her apartment, that she was abusing drugs, and that she had failed to care for the children's basic needs. Further evidence was presented that appellant was incarcerated and had a lengthy criminal history. The evidence presented indicated that appellant had a history of drug abuse. Calvin was temporarily placed with a family friend, Mr. Herman Ford.
In January 1998, a case plan was implemented in accordance with R.C.2151.412(C) (D). The goal of the case plan was to return Calvin to appellant's custody. Pursuant to the case plan, appellant was to refrain from all drug activity; refrain from all criminal activity; locate and maintain stable, secure, and appropriate housing; obtain legitimate income to provide financially for the children; and visit the children on a regular basis.
On February 11, 1998, an adjudicatory hearing was held. On March 20, 1998, Calvin was adjudicated to be a dependent child and temporary custody was granted to CSB. Appellant did not object to this determination. On October 21, 1998, CSB moved for permanent custody of Calvin. The dispositional hearing was postponed to permit appellant time after she was released from prison to work towards her case plan.
On April 8, 1999, and April 22, 1999, a hearing was held on CSB's motion for permanent custody of Calvin and his older brother, Leon. Evidence was presented that appellant had never had either physical or legal custody of the children. The magistrate found that appellant had been incarcerated for much of the time since the children's births. Additionally, the magistrate noted that appellant had very limited contact with the children when she was not incarcerated. Appellant had been released from Marysville Prison in January prior to the hearing; however, she had been almost immediately rearrested in February and was serving an eleven month prison term. Appellant, herself, testified that she is "an alcoholic and an addict." She further acknowledged that she has never received treatment for these problems. Appellant testified that she does not abuse her children, however, she admitted that she "whupped" the children with a belt. Leon testified that whenever his mother would stay with the family he would run away to avoid her physical and verbal abuse.
Evidence was presented at that hearing that Mr. Ford has had an extremely positive, lifelong relationship with Calvin. Mr. Ford requested that Calvin be placed in his legal custody with the hopes of eventually being able to adopt the child. Based upon the testimony presented at the hearing, the magistrate recommended that the court grant Mr. Ford legal custody with an order of protective supervision by CSB.[2] The magistrate noted that it was her recommendation that the court not grant permanent custody of Calvin to CSB at that time due to possible legal or other impediments that might then exist to placing Calvin in Mr. Ford's custody due to Mr. Ford's advanced age. Instead, the magistrate recommended that Calvin be placed in a planned permanent living arrangement with Mr. Ford.
Appellant filed timely objections to the magistrate's decision.[3]
Although appellant filed her objections in both the case involving Leon and the case involving Calvin, appellant did not contest any of the magistrate's findings or recommendations regarding Calvin. On November 1, 1999, the court overruled appellant's objections and entered judgment.
Calvin remained in Mr. Ford's care for a short period of time, however, due to health concerns, Mr. Ford was no longer able to care for the child. Mr. Ford approached CSB about the situation. CSB subsequently filed a motion to dismiss the original case, DN 97-11-1087, and filed a request for a change of disposition in a new case, DN 99-10-1007. On October 28, 1999, Magistrate Luecke issued an order that dismissed Calvin's case without prejudice. That order was not signed by the court. Following a hearing, a different magistrate ordered CSB to dismiss the new case and file a proper motion for a change of disposition under the original case number. CSB then filed a motion for relief from judgment under Civ.R. 60(B)(5). CSB also filed a third case in this matter, DN 00-02-131, alleging the exact same facts as in the second case. On March 3, 2000, the court entered a judgment that ordered CSB to dismiss the second and third cases; vacated the magistrate's decision dismissing the case; ordered CSB to file a motion for a change of disposition under the original case number; and denied CSB's motion for relief from judgment.
On March 22, 2000, under the original case number, CSB moved for a change of disposition from legal custody to emergency temporary custody of Calvin. On that same date, CSB moved the court for a change of disposition from emergency temporary custody to permanent custody. On June 9, 2000, appellant moved to dismiss this case and alternatively moved for relief from the court's judgment dated March 3, 2000.
On June 13, 2000, a hearing was held on CSB's motion for permanent custody. Following the hearing, the court granted permanent custody of Calvin to CSB and denied appellant's motions to dismiss and for relief from judgment. Appellant timely appealed and has raised four assignments of error for review.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO DISMISS AND/OR MOTION FOR RELIEF FROM JUDGMENT.
In her first assignment of error, appellant has argued that the trial court erred in denying her motion to dismiss the case and in denying her motion for relief from judgment. This Court disagrees.
In her motion to dismiss/motion for relief from judgment appellant argued that the trial court erred when it vacated the magistrate's dismissal of the case and ordered that the parties continue under the original case number. In its order denying appellant's motions, the trial court ruled that the objections filed by appellant had stayed the matter and thus, the magistrate was without jurisdiction to dismiss the case until after the court had ruled on the objections. Therefore, the trial court ruled that because the magistrate did not have jurisdiction to enter the ruling, the matter had not been dismissed, and it was proper for the court to order the parties to continue under the original case number. On appeal, appellant has disputed the trial court's finding that the matter was stayed. She has first argued that from the parties' actions it is clear that neither CSB nor appellant were under the assumption that the objections had stayed this portion of the case since the objections dealt solely with the disposition regarding Calvin's brother Leon. Appellant has next contended that because neither party objected to the dismissal by the magistrate, the dismissal was valid and the court's subsequent actions were in error. Appellant has finally argued that the court's actions in ordering the parties to continue under the original case number were arbitrary and unreasonable and therefore were in error. We need not address appellant's arguments though as we find that the magistrate's order of dismissal was void from the start.
Pursuant to Juv.R. 40(C)(3)(a):
 the magistrate may enter orders effective without judicial approval in pretrial proceedings under Civ.R. 16, in discovery proceedings under Civ.R. 26 to 37, Juv.R. 24 and 25, and in the following situations:
 (i) Appointment of an attorney or guardian ad litem pursuant to Juv.R. 4 and 29(B)(4);
(ii) Taking a child into custody pursuant to Juv.R. 6;
(iii) Detention hearings pursuant to Juv.R. 7;
(iv) Temporary orders pursuant to Juv.R. 13;
(v) Extension of temporary orders pursuant to Juv.R. 14;
(vi) Summons and warrants pursuant to Juv.R. 15;
(vii) Preliminary conferences pursuant to Juv.R. 21;
(viii) Continuances pursuant to Juv.R. 23
(ix) Deposition orders pursuant to Juv.R. 27(B)(3);
 (x) Orders for social histories, physical and mental examinations pursuant to Juv.R. 32;
(xi) Other orders as necessary to regulate the proceedings.
The October 28, 1999, dismissal order in question here was signed only by the magistrate and was not signed by the court. The power to grant a dismissal without judicial approval is not listed. Accordingly, since the magistrate did not have the authority to enter a dismissal without judicial approval, and the order was never signed by the court, the order dismissing the case was not effective. Therefore, the trial court did not err in denying appellant's motion to dismiss or her motion for relief from judgment since, in effect, there was no valid judgment. Appellant's first assignment of error is without merit.
 ASSIGNMENT OF ERROR II THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED APPELLANT'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS WHEN THE TRIAL COURT REACTIVATED CASE NO. DN 97-11-1087; ORDERED THE SUMMIT COUNTY CHILDREN SERVICES BOARD (CSB) TO DISMISS CASE NO. DN-00-[0]2-131; AND ORDERED CSB TO FILE A MOTION TO CHANGE DISPOSITION IN CASE NO. DN 97-11-1087 WHERE THERE WAS A SUBSTANTIAL CHANGE IN THE MINOR CHILD'S CIRCUMSTANCES AFTER CASE NO. DN 97-11-1087 WAS PROPERLY DISMISSED BY THE TRIAL COURT AND THE TRIAL COURT DID NOT SPECIFICALLY RESERVE CONTINUING JURISDICTION OVER THE CHILD IN ACCORDANCE WITH [R.C.] 2151.353(E)(1).
In her second assignment of error, appellant has argued that the trial court erred when it "reactivated" the original case and ordered CSB to continue under the original case where the original case had been properly dismissed and where the court failed to retain jurisdiction. This Court disagrees with each of appellant's contentions.
First this Court notes that, as this Court has held above, the original case was not properly dismissed and thus the court did not "reactivate" the case because it had never been closed. Therefore, appellant's first contention is without merit for the reasons previously stated.
Second, this Court finds that the trial court did not err in proceeding in the original case even though it had not specifically reserved continuing jurisdiction following the granting of legal custody to Mr. Ford. Appellant has argued that R.C. 2151.35.3 mandates that the court make an entry on the journal in order to continue its jurisdiction. Appellant has further argued that because the court did not enter such an order in this case, the court was without jurisdiction to modify Calvin's custody status. Therefore, appellant has concluded that the court erred by continuing under the original case number in this matter. Appellant has misconstrued the statute.
R.C. 2151.35.3(E)(1) states that "[t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section or pursuant to section2151.414[2151.41.4] or 2151.415[2151.41.5] of the Revised Code until the child attains the age of eighteen[.]" (Emphasis added.) This section then enumerates circumstances under which the court may retain jurisdiction of a child after the age of eighteen for a specified period of time in order to allow the child to graduate from high school or vocational school. The portion of this section that indicates that the court is to enter an order upon the journal in order to retain jurisdiction modifies this latter section and not the former under which the court retains jurisdiction over all children for whom it has made a disposition. See, also, In reDoe Children (1994), 93 Ohio App.3d 134, appeal not allowed (1994),69 Ohio St.3d 1481. Additionally, R.C. 2151.41.7 and Juv.R. 36(A) allow a court to review a child's placement or custody arrangement at any time.In re Bowman (1995), 101 Ohio App.3d 599. Therefore, the trial court did not err in modifying the dispositional status in this case. Appellant's second assignment of error is without merit.
 ASSIGNMENT OF ERROR III THE TRIL COURT ERRED IN FAILING TO CONDUCT AN ADJUDICATORY HEARING FOLLOWING THE MARCH 22, 2000, AWARD OF EMERGENCY TEMPORARY CUSTODY TO CSB AND PRIOR TO THE JUNE 13, 2000, PERMANENT CUSTODY HEARING.
In her third assignment of error, appellant has argued that the trial court erred by failing to conduct an adjudicatory hearing following the award of temporary custody to CSB and prior to granting CSB permanent custody of Calvin. Specifically, appellant has argued that the court failed to adjudicate Calvin either an abused, neglected, or dependent child, and therefore it was error for the court to proceed with the dispositional hearing. This Court disagrees.
Calvin was adjudicated to be a dependent child on April 28, 1999. Appellant appears to argue that because a new motion for permanent custody was filed subsequent to that determination, Calvin must again be adjudicated to be either dependent, neglected or abused before the court may proceed with the dispositional hearing. This is not the case.
Pursuant to R.C. 2151.41.4(A)(1), "[t]he adjudication that the child is an abused, neglected, or dependent child * * * shall not be readjudicated at the hearing [for permanent custody.]" Therefore, since Calvin was already adjudicated to be a dependent child, it was not necessary to re-litigate the issue. Appellant's third assignment of error is without merit.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW AND/OR AN ABUSE OF DISCRETION.
In appellant's fourth assignment of error, she has argued that the trial court erred by granting CSB's motion for permanent custody. Specifically, appellant has argued that the trial court's findings are not supported by clear and convincing evidence and are against the manifest weight of the evidence. This Court disagrees.
This Court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Lagasse v. Yaeger (Sept. 2, 1998), Lorain App. No. 97CA006774, unreported; Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported. Therefore we:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
(Alteration in original) Lagasse, supra, citing State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, quoting State v.Otten (1986), 33 Ohio App.3d 339, 340. In effect, an appellate court which overturns a judgment on manifest weight of the evidence grounds adopts a fact-finding role, setting aside the resolution of evidence and testimony as found by the trier of fact. See State v. Thompkins (1997),78 Ohio St.3d 380, 387. This action is reserved for the exceptional case, where the evidence weighs heavily in favor of the appellant. SeeState v. Otten, 33 Ohio App.3d at 340, citing State v. Martin (1983),20 Ohio App.3d 172.
Termination of parental rights is sanctioned when necessary for the welfare of a child but is an "alternative of last resort." In re Wise
(1994), 96 Ohio App.3d 619, 624. Termination of parental rights in the situation where a child is not orphaned or abandoned is governed by R.C. 2151.41.4(B)(1), which provides in part:
 [T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 This is a two-part inquiry, requiring courts to determine whether, "by clear and convincing evidence[,] * * * both: (1) the grant of permanent custody to the petitioning agency is in the best interest of the child, and, (2) the child cannot or should not be placed with either parent within a reasonable time." In re Higby (1992), 81 Ohio App.3d 466, 468.
Appellant has initially contested the court's finding with regard to the first prong of this test. Appellant argued that the trial court's judgment that permanent custody was in Calvin's best interests was against the manifest weight of the evidence. This Court disagrees.
R.C. 2151.41.4(D) provides that in determining the best interests of a child, a court should consider all relevant factors, including but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
In light of all of the evidence, it is clear that the record supports that the child's best interests could only have been served through the granting of permanent custody to CSB.
Upon review of the procedural history of this case, it is clear that Calvin has never been in appellant's custody due to appellant's various problems. Calvin has been in the custody of CSB since November 1997. Therefore, he has spent more than the required twelve months out of the last twenty-two in the care and custody of CSB.
In addition to the fact that the child has never been in appellant's custody, a review of the child's relationship with appellant and the bonding between them reveals that it is in the best interests of the child that he be placed in the custody of CSB. There was testimony given at the hearing that due to appellant's extremely limited time spent with Calvin there is no bond between them. In fact, the caseworker indicated that Calvin stated that he did not remember what his mother looked like. Additionally, at trial appellant testified that she did not know Calvin's birth date. There was evidence presented that Calvin has developed a close bond and a very strong attachment to his foster mother.
In addition to the factors listed above, Calvin has medical conditions that require that he be placed in a stable, secure home environment. Dr. Alan Sterling testified that Calvin has been diagnosed with oppositional defiant behavior, attention deficit disorder, and attention hyperactive disorder. Dr. Sterling noted that Calvin had been diagnosed as a neglected or abused child. Dr. Sterling testified that as a result of Calvin's disorders and the history behind them, Calvin experiences intense anxiety and fearfulness over his environment and caretakers. Specifically, Calvin is extremely troubled about who will take care of him and whether that arrangement will remain permanent. Dr. Sterling testified that Calvin needs a stable, consistent environment wherein the caretaker meets the child's needs, is responsive, sets proper limits, and consistently provides necessities such as food, shelter, and health care. Dr. Sterling testified that to treat Calvin's problems it is necessary for him to be medicated, attend therapy sessions, and exist in a stable home environment. While appellant has argued in her brief that she is willing to work with CSB to regain custody of her child, at the hearing appellant denied that Calvin had any such problems and blamed any troubles on her own mother, CSB, and the foster mother. In light of appellant's unwillingness to acknowledge Calvin's problems, it is unlikely that without a grant of custody to CSB that the child will be provided with the stable environment he needs.
As indicated above, the evidence supports the trial court's findings that it is in Calvin's best interests that permanent custody be granted to CSB. Therefore, the trial court did not err in its determinations under the first prong of the test.
Appellant has also challenged the second prong of the test, arguing that the trial court erred in finding that the child cannot or should not be returned to either parent within a reasonable amount of time. Specifically, appellant has argued that Calvin can be returned to her within a reasonable amount of time because she will be released from prison within eighteen months; she intends to seek substance abuse treatment; and she is willing to work with CSB to be reunified with her child.
The evidence presented at trial does not support appellant's aspirations. There were numerous areas of concern indicated in the evidence that show that the child would not be able to be safely placed with appellant. Specifically, appellant has had serious problems with alcohol and substance abuse; appellant has an extensive criminal history with repeated incarcerations showing a high rate of recidivism; appellant has failed to take any affirmative steps to comply with the case plan; and appellant has failed to show an interest in maintaining visitation with Calvin. The unfitness of a parent can be predicted by past history.In re Bishop (1987), 36 Ohio App.3d 123, 126.
Appellant has exhibited ongoing problems with substance abuse. Appellant testified that she has been using drugs since she was thirteen years old. She stated that she started smoking marijuana and then she moved on to using "dope." For the past sixteen years she has been using crack cocaine. Appellant indicated that she has never sought or received treatment for her addictions. Pursuant to the case plan, appellant was to "refrain from any and all drug activity." At the time of the permanent custody hearing, appellant had been arrested on a charge of possession of drugs and was being held on those charges. Appellant did not contest that she was in possession of crack cocaine at the time of her arrest. Additionally, appellant admitted to having used drugs within the three months prior to the permanent custody hearing. The case plan also provided that appellant was to "have a substance abuse evaluation to assess the extent of her dependency on drugs." Appellant admitted that she had failed to comply with the requests of the caseworker to submit to a drug screen. Appellant blamed her lack of compliance on transportation issues.
There are also significant issues with appellant's repeated criminal involvement and subsequent incarcerations. Appellant herself testified that she has been arrested almost one hundred times, not including her arrests in the juvenile system. Some of those arrests involved theft, prostitution, and drug possession. These repeated incarcerations in conjunction with the other factors have prevented appellant from having any type of consistent relationship with her child in the past. Upon review of the record, it is unlikely that upon her release that appellant will be able to remain free for any period of time in the future.
Appellant has failed to attend a single visitation with Calvin. When appellant was released from prison in 1999, she contacted CSB about visitation with Calvin. Five separate visitations were scheduled. Appellant failed to attend a single one. Appellant blamed her lack of attendance on her transportation problems, however, testimony was given that the caseworker mailed bus passes to the address where appellant had stated she was residing. Evidence was presented that the impact of these missed visitations upon Calvin was extremely traumatic and hurtful for him.
At the hearing, appellant testified that she is unable at this point to care for Calvin. She further indicated that she has substantial changes that she needs to make in her own life before she will be in a position to care for her child. Appellant then pleaded for more time to get her life together. Appellant gave no indication as to how long this potential life renewal would take. Therefore, while appellant now contends that the trial court erred in finding that she is unable to care for the child in a reasonable amount of time, upon review of the evidence presented, it is clear that due to appellant's problems with addictions and her ongoing legal problems, coupled with her complete lack of commitment to her child, appellant is unable to provide a safe, stable home for the child. In light of the foregoing evidence, it is apparent that the child cannot and should not be placed with appellant within a reasonable time.
After reviewing the record and weighing the evidence, the trial court's order granting permanent custody of Calvin to CSB was not against the manifest weight of the evidence. Appellant's fourth assignment of error is without merit.
Appellant's assignments of error are without merit and they are hereby overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] Calvin's older brother, Leon, was also removed from the grandmother's home at that time and placed under the emergency temporary custody of CSB.
[2] The court terminated appellant's parental rights to Leon at that time.
[3] Appellant sought and obtained six extensions of time for filing objections. Appellant's objections were finally filed on July 27, 1999.